# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Ceres Environmental Services, Inc.,

|                          |                                    |
|--------------------------|------------------------------------|
|              Plaintiff,  | Civ. No. 10-4570 (RHK/JSM)         |
| v.                       | **MEMORANDUM OPINION**             |
|                          | **AND ORDER**                      |

Arch Specialty Insurance Company,

                          Defendant.

---

Steven L. Theesfeld, Yost & Baill, LLP, Minneapolis, Minnesota, for Plaintiff.

Neal M. Glazer, Jonathan L. Kranz, D'Amato & Lynch, LLP, New York, New York, Richard A. Lind, Matthew D. Sloneker, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, Minnesota, for Defendant.

---

Plaintiff Ceres Environmental Services, Inc. ("Ceres") alleges in this action that Defendant Arch Specialty Insurance Company ("Arch"), its insurer, failed to pay all the costs it incurred defending a lawsuit brought against it in state court in Alabama. Presently before the Court is Arch's Motion for Summary Judgment. For the reasons that follow, its Motion will be granted.

## BACKGROUND

The background in this matter is complex and is set forth in more detail in the Court's December 29, 2011 Order on Arch's Motion for Summary Judgment Based on Collateral Estoppel (Doc. No. 47). Familiarity with that background is presumed and will be recounted here only to the extent necessary to provide an overview of the parties' claims and the pending Motion.

In July 2007, a truck being driven in Alabama by a Ceres subcontractor ("CMT") collided with a car, causing serious injuries to the car's occupants.  The accident victims commenced an action against CMT and Ceres in Alabama state court (the "State Action"), and Ceres tendered defense of the matter to Arch, its insurer.  Ceres then retained a large Atlanta law firm to serve as lead counsel, a smaller Alabama firm to act as local counsel, and a private investigation company to locate and interview potential witnesses to the accident.  Ultimately, it paid these firms over $1.7 million in connection with the State Action.  Ceres asserts that Arch expressly authorized it to retain these firms to defend itself, but there is no evidence before the Court to support that assertion.[1]

In July 2009, more than a year after Ceres tendered defense of the State Action to Arch, Arch denied coverage and refused to indemnify or defend it in that case.  Ceres asked Arch to reconsider, and in September 2009, it reversed itself and agreed to defend Ceres, subject to a reservation of rights.  Its reservation-of-rights letter expressly provided that it would reimburse Ceres only for "reasonable defense expenses."  (Doc. No. 41, Ex. 1 at 2.)  Not long thereafter, the State Action settled, with Arch contributing nearly $3 million to the settlement on Ceres's behalf.  It later reimbursed slightly more than $1 million Ceres had expended defending the State Action.  Yet, this left unpaid over $600,000 in Ceres's defense costs.

---

[1] In fact, there is little evidence before the Court *at all* in connection with the instant Motion. The lone piece of "evidence" proffered by Ceres is the Affidavit of its business manager, Steven Johnson.  In that Affidavit, Johnson avers that after Ceres tendered the claim to Arch, he was contacted by an attorney purporting to represent Arch in connection with Ceres's claim, who "did not object" to the Atlanta law firm it had selected to defend itself and "agreed to use [that firm] to file the initial Answer to the Complaint" in the State Action.  (Johnson Aff. (Doc. No. 44) ¶ 5.)

Meanwhile, on September 29, 2008, Ceres filed a cross-claim against CMT in the State Action, asserting that it was entitled to indemnification for all amounts paid, including defense costs, in connection with that action. The state court severed this claim and CMT removed it to the United States District Court for the Southern District of Alabama (the "Alabama Federal Action"). It was eventually determined in the Alabama Federal Action that the "reasonable" amount of fees and costs incurred by Ceres defending the State Action was $1,118,293, not the $1.7 million it had actually expended.

On November 16, 2010, Ceres commenced the instant action, alleging *inter alia* that Arch had breached its insurance policy (the "Policy") by failing to reimburse all of Ceres's defense costs in the State Action. The Complaint asserted four claims: common-law tort of bad faith (Count 1); violation of Alabama Code § 27-12-24 (Count 2);[2] breach of contract and bad faith under New York law (Count 3);[3] and violation of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69 *et seq.* (Count 4). Arch asserted three counterclaims, generally alleging that if Ceres were successful on its claims against CMT in the Alabama Federal Action, it (Arch) was entitled to a portion of Ceres's recovery under the terms of the Policy. Arch later moved for partial summary judgment, arguing that Ceres was collaterally estopped from relitigating the reasonableness of the fees and costs incurred defending the State Action, in light of the decision in the Alabama Federal

---

[2] Section 27-12-24 provides: "No insurer shall, without just cause, refuse to pay or settle claims arising under coverages provided by its policies in this state and with such frequency as to indicate a general business practice in this state, which general business practice is evidenced by: (1) [a] substantial increase in the number of complaints against the insurer received by the insurance department; (2) [a] substantial increase in the number of lawsuits against the insurer or its insureds by claimants; and (3) [o]ther relevant evidence."

[3] The Policy contains a New York choice-of-law clause.

Action.  By Order dated December 29, 2011, this Court agreed.  (See Doc. No. 47.)  In its

Order, however, the Court noted that Arch had not explained what effect, if any,

collateral estoppel would have on this case.  (See id. at 6 (noting that "even if the Court

were to determine that collateral estoppel bars Ceres from relitigating the reasonableness

of its fees, it does not automatically follow that Arch would be entitled to summary

judgment on any of the claims in the Complaint or its counterclaims").)

The instant Motion puts this issue squarely before the Court.  That is, Arch now

asserts it is entitled to dismissal of Ceres's claims because Ceres cannot recover more

than *reasonable* fees and costs incurred defending the State Action, which amount

already has been determined in the Alabama Federal Action and been paid by Arch.[4]  It

also argues that Ceres's remaining claims (for bad faith and violation of various state

statutes) fail as a matter of law.  The Motion has been fully briefed, the Court held a

hearing on March 28, 2012, and it is now ripe for disposition.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the

nonmoving party, there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett,

477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that the

material facts in the case are undisputed.  Id. at 322; Whisenhunt v. Sw. Bell Tel., 573

---

[4] To be clear, the Alabama Federal Action determined that the reasonable amount of fees and
costs expended by Ceres in the State Action was $1,118,293, but Arch has reimbursed only
$1,026,867, leaving a difference of $91,426.  Arch concedes it must pay the difference to Ceres,
but it has nowhere explained why it has not yet done so.

F.3d 565, 568 (8th Cir. 2009).  The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

## ANALYSIS

### I.     Ceres cannot recover more than reasonable fees

The crux of Ceres's case is breach of contract, and the primary question posed by Arch's Motion is whether, under New York law,[5] Ceres can recover legal fees incurred in the State Action exceeding the amount already determined (in the Alabama Federal Action) to be reasonable.  Stated differently, Ceres incurred approximately $1.7 million defending the State Action, but the Alabama federal court determined that amount was excessive and reduced it to about $1.1 million.  While Arch does not dispute it owed Ceres a duty to defend under the Policy – meaning that it was obligated to pay at least *some* of Ceres's defense costs – the dispositive question is whether Ceres can recover the remaining $600,000 from Arch, which was determined to be "unreasonable" in the Alabama Federal Action.  Arch argues that New York law limits an insured "to

---

[5] The parties agree that New York law controls Ceres's breach-of-contract claim, as the Policy contains a New York choice-of-law clause.  (See Def. Mem. at 5-6; Mem. in Opp'n at 3-4.)

reimbursement . . . for *reasonable* defense costs" (Def. Mem. at 4 (emphasis added)),

while Ceres argues that no such limitation exists (see Mem. in Opp'n at 7-11). In the

Court's view, Arch has the better argument.

Neither party has cited a controlling case from the New York Court of Appeals

(New York's highest court), and this Court's own research has not uncovered one.[6]

Accordingly, this Court's task is to predict how New York's highest court would resolve

the issue if confronted with it. E.g., Marvin Lumber & Cedar Co. v. PPG Indus., Inc.,

223 F.3d 873, 876 (8th Cir. 2000). Cases from New York's intermediate appellate courts

provide mixed signals. Compare, e.g., Urban Res. Inst., Inc. v. Nationwide Mut. Ins. Co.,

594 N.Y.S.2d 261, 262 (App. Div. 1993) (breach of duty to defend obligates insurer to

pay "*any and all* legal costs incurred in defending" the underlying action) (emphasis

added), with, e.g., George Muhlstock & Co. v. Am. Home Assurance Co., 502 N.Y.S.2d

174, 180 (App. Div. 1986) ("A breach of the covenant to defend makes the insurer liable

for . . . *reasonable* counsel fees and necessary expenses.") (emphasis added).[7]

Rational arguments support each side of this issue. New York follows the

"ordinary" rule that unambiguous insurance-policy language will be applied as written,

Bridge Metal Indus., L.L.C. v. Travelers Indem. Co., 812 F. Supp. 2d 527, 535 (S.D.N.Y.

2011), and it would be a simple task for an insurer to include language in its policy

---

[6] The New York Court of Appeals has *suggested*, in *dicta*, that an insured is entitled to no more than reasonable defense costs. See Pub. Serv. Mut. Ins. Co. v. Goldfarb, 425 N.E.2d 810, 815 (N.Y. 1981).

[7] Notably, Urban Resource cited George Muhlstock for the proposition that *all* defense costs can be recovered, even though the latter held only that *reasonable* costs are recoverable.

limiting its liability to "reasonable" defense costs.  Notably, Arch acknowledged at oral

argument that no such Policy language exists here.  Moreover, to the extent the scope of

Arch's obligations under the Policy are unclear, such ambiguity inures to Ceres's benefit.

See, e.g., Butler v. N.Y. Cent. Mut. Fire Ins. Co., 711 N.Y.S.2d 607, 609 (App. Div.

2000).  And, consistent with its duty to defend, Arch retained the right to select counsel

to defend Ceres in the State Action.  E.g., Ottaviano v. Genex Coop., Inc., 790 N.Y.S.2d

791, 792 (App. Div. 2005) ("As a general rule, a liability insurer has a right to control the

defense of underlying litigation against its insured.").  Arch failed to avail itself of that

right, undermining its complaints about the "unreasonable" costs incurred by Ceres.

On the other hand, courts have been reluctant to permit recovery of more than

reasonable costs, with good reason:  lawyers are ethically bound to charge only

reasonable fees to their clients.  See American Bar Association Model Rule of

Professional Conduct 1.5(a) ("A lawyer shall not make an agreement for, charge, or

collect an unreasonable fee or an unreasonable amount for expenses.").[8]  Furthermore,

some courts have recognized that even when an insurance policy does not expressly limit

an insured's recovery to "reasonable" defense costs, such a limitation arises by

implication because "without such an understood qualification of reasonableness, insurers

would be at the mercy of their insured's attorneys."  Macmillan, Inc. v. Fed. Ins. Co., 141

F.R.D. 241, 243-44 (S.D.N.Y. 1992).  As noted in Liberty Mutual Insurance Co. v.

Continental Casualty Co., 771 F.2d 579, 582 (1st Cir. 1985), permitting recovery of *all*

---

[8] The ABA's Model Rules have been adopted (in relevant part) in New York, Minnesota, and
Alabama.

fees and costs rather than reasonable ones "would be to invite excessive, duplicative, or outrageous charges – charges which were not originally contemplated by the parties to the policy and which, if allowed, might ultimately lead to increased premiums for many purchasers of insurance."

These policy arguments suggest it is "common sense" that an insured cannot recover more than reasonable defense costs, as Ceres's counsel candidly acknowledged at oral argument.  (3/28/12 Hear. Tr. at 19.)  Hence, the greater weight of authority both inside and outside of New York recognizes that the duty to defend extends only to reasonable costs, see, e.g., ACP Servs. Corp. v. St. Paul Fire & Marine Ins. Co., 637 N.Y.S.2d 566, 568 (App. Div. 1996); 1010 Tenants Corp. v. Atl. Mut. Ins. Co., 536 N.Y.S.2d 439, 440 (App. Div. 1989) (Mem.); Emhart Indus., Inc. v. Home Ins. Co., 515 F. Supp. 2d 228, 250-52 (D.R.I. 2007); Ins. Co. of N. Am. v. Milberg Weiss Bershad Specthrie & Lerach, No. 95 Civ. 3722, 1996 WL 520902, at *7-8 (S.D.N.Y. Sept. 12, 1996); Oscar W. Larson Co. v. United Capitol Ins. Co., 845 F. Supp. 458, 461 (W.D. Mich. 1993); Emons Indus., Inc. v. Liberty Mut. Ins. Co., 747 F. Supp. 1079, 1084 (S.D.N.Y. 1990), which accords with the leading treatise on insurance law, see 14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 202:7 (3d ed. 2010) ("[T]he insured is entitled to be reimbursed for reasonable attorney's fees and disbursement.").  In this Court's view, if confronted with the question the New York Court of Appeals would reach the same result and conclude that an insurer is obligated to reimburse only reasonable defense costs to its insured, notwithstanding the absence of such an express limitation in its insurance policy.

Perhaps anticipating this result, Ceres argues it may recover all of its costs notwithstanding New York law because Arch (1) authorized it to retain counsel and (2) never objected to the costs it was incurring as it defended the State Action.  (Mem. in Opp'n at 6-7.)  This does not change the outcome, for two reasons.  First, while Arch (purportedly) authorized Ceres to retain counsel, it has proffered no evidence supporting that assertion and, more importantly, has pointed to no evidence indicating that Arch agreed to pay *all* costs of that counsel, no matter how excessive or unreasonable.  Indeed, Arch's reservation-of-rights letter provided that Arch would reimburse Ceres only for "*reasonable* defense expenses."[9]

Second, Ceres has pointed to no Policy language requiring Arch to object to the fees and costs incurred by Ceres defending the State Action, lest it be precluded from doing so later.  Ceres's argument sounds in waiver; by failing to object to the costs, Ceres argues, Arch has essentially waived the right to challenge them now.  But Ceres cannot rely on waiver to expand the scope of the Policy's coverage from *reasonable* costs to *all* costs:  "[w]here the issue is the existence or non-existence of coverage . . ., the doctrine of waiver is simply inapplicable."  Albert J. Schiff Assocs., Inc. v. Flack, 417 N.E.2d 84, 87 (N.Y. 1980).  Nor would the closely related doctrine of equitable estoppel apply under the facts here, as Ceres has not shown Arch "lulled [it] into sleeping on its rights under

---

[9] To be sure, the letter provided that Arch would pay reasonable defense expenses "subject to the Policy's Common Conditions 7(c)," which "common conditions" Arch has conceded are inapplicable here.  This does not alter the analysis, however; it simply means that defense costs were limited to reasonable ones, but not *further* limited by the common conditions.  See Black's Law Dictionary 1425 (6th ed. 1990) (defining "subject to," *inter alia*, as "obedient to" and "provided that").

the" Policy.  <u>Gilbert Frank Corp. v. Fed. Ins. Co.</u>, 520 N.E.2d 512, 514 (N.Y. 1988).

Notably, there is not a single iota of evidence – no affidavit, no deposition testimony,

nothing – before the Court indicating that Ceres would have defended the State Action

any differently had it been informed by Arch that the costs it was incurring were too high.

As a result of the foregoing, Ceres's breach-of-contract claim (Count 3) must be

dismissed, except insofar as it seeks payment of the remaining $91,426 in "reasonable"

costs not yet paid by Arch.  (<u>See</u> note 4 <u>supra</u>.)

## II.     The bad-faith claims

Count 1 of the Complaint asserts a claim for "common law tort of bad faith,"

predicated on allegations that Arch, *inter alia*, (1) failed to adequately investigate the

claims in the State Action, (2) "improperly and knowingly denied coverage to Ceres,"

and (3) failed to reimburse all of Ceres's defense costs.  (<u>See</u> Compl. ¶¶ 18-25.)  Part of

Count 3 makes similar allegations and asserts bad faith under New York law.  (<u>See</u> <u>id.</u>

¶¶ 31-33.)  Besides the failure to pay defense costs, however, this claim is confusing.

It is undisputed that Arch contributed nearly $3 million to the State Action

settlement on Ceres's behalf and reimbursed more than $1 million in defense costs.

Hence, it is unclear precisely how Arch (supposedly) committed a tort by "knowingly and

improperly den[ying] Ceres coverage in the [State] Action and refus[ing] to defend or

indemnify Ceres."  (<u>Id.</u> ¶ 31.)  Indeed, this allegation is inconsistent with Ceres' other

claims:  on one hand Ceres asserts that Arch "refused to defend" it and yet, on the other

hand (and as discussed in more detail above), it also contends that Arch authorized it to

retain counsel to defend itself.  Further, Ceres nowhere explains in what way Arch

purportedly failed to "conduct a proper investigation/evaluation of the [State Action]."[10]

Regardless of such shortcomings, these claims fail because New York does not

recognize an independent tort of "bad faith" vis-à-vis an insurer's obligations to its

insured.  See, e.g., Johnson v. Allstate Ins. Co., 823 N.Y.S.2d 415, 416 (App. Div. 2006)

("There is no separate tort for bad faith refusal to comply with an insurance contract.");

Wiener v. Unumprovident Corp., 202 F. Supp. 2d 116, 123 (S.D.N.Y. 2002) ("Under

New York law, an independent tort action for bad faith denial of insurance coverage is

not recognized.") (citation omitted); Acquista v. N.Y. Life Ins. Co., 730 N.Y.S.2d 272,

277-78 (App. Div. 2001) ("[T]he plaintiff's cause of action alleging bad faith conduct on

the part of the insurer cannot stand as a distinct tort cause of action.").  To be sure, Count

1 alleges bad faith under the *common law* and not *New York* law, but the Court concludes

that New York law also must apply to that claim.  This is because tort claims "rais[ing]

issues of performance" under a contract or "closely related to the interpretation of a

contract," such as those asserted by Ceres here, are governed by the contract's choice-of-

law clause.  Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1392 (8th

Cir. 1997); accord, e.g., Fla. State Bd. of Admin. v. Law Eng'g & Envtl. Servs., Inc., 262

F. Supp. 2d 1004, 1013 (D. Minn. 2003) (Doty, J.).

While perhaps not immediately obvious, the same result must obtain with respect

to Ceres's remaining claims under Alabama's "bad faith" law, Ala. Code § 27-12-24

---

[10] The bad-faith claims also allege that Arch "improperly and knowingly refused to pursue subrogation" from other at-fault parties in the State Action, such as CMT.  Yet, Ceres points to no authority obligating Arch to pursue subrogation claims.

(Count 2), and the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69 (Count 4).

Ceres argues that these claims are governed by their respective states' laws and not by the

Policy's choice-of-law clause, citing New York cases for the proposition that a contract's

choice-of-law clause reaches non-contract claims only when it is "sufficiently broad,"

which Ceres posits is not true here.  (Mem. in Opp'n at 11.)[11]  The flaw in this argument

is that *Minnesota* law, not New York law, determines whether the choice-of-law clause is

broad enough to apply to Ceres's non-contract claims.  As explained by one court:

> The validity of a contractual choice-of-law clause is a threshold question
> that must be decided not under the law specified in the clause, but under the
> relevant forum's choice-of-law rules governing the effectiveness of such
> clauses.  In this case, neither party disputes the validity of the choice-of-law
> clause; instead, they differ over its scope.
>
> Determining which jurisdiction's law governs the scope of a valid
> choice-of-law clause is not a simple matter.  On the one hand, once a court
> finds that a contractual choice-of-law clause is valid, the law selected in the
> clause dictates how the contract's provisions should be interpreted, and so
> arguably that law should also dictate how the choice-of-law clause – which
> is itself one of the contract's provisions – should be interpreted.  *More
> commonly, however, courts consider the scope of a contractual choice-of-
> law clause to be a threshold question like the clause's validity.  Courts
> therefore determine a choice-of-law clause's scope under the same law that
> governs the clause's validity – the law of the forum.*

Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc., 414 F.3d 325, 333 (2d Cir.

2005) (emphasis added) (citations omitted); accord, e.g., Schwan's Sales Enters., Inc. v.

SIG Pack, Inc., 476 F.3d 594, 597-98 (8th Cir. 2007).

For this reason, the breadth of the Policy's New York choice-of-law clause must

be analyzed under *Minnesota* law.  And under Minnesota law, it is clear that the clause

---

[11] The Court notes the irony in Ceres's argument:  it relies upon cases applying New York law to
argue that New York law does *not* apply to Counts 2 and 4.

reaches Counts 2 and 4; indeed, that result is dictated by <u>Astraea</u>.  There, the contract in question contained a choice-of-law clause providing:  "This Agreement shall be deemed entered into within and shall be governed by and interpreted in accordance with the laws of the State of Minnesota."  111 F.3d at 1392.  Astraea asserted a number of tort claims, including one for violation of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.41 *et seq.*, based on defamatory statements allegedly made about its performance under the contract.  <u>Id.</u>  Applying Minnesota law to determine whether the choice-of-law clause reached these non-contract claims, this Court concluded that the choice-of-law clause *did* apply, because the claims arose out of Astraea's performance (or lack thereof) of contractual duties; the Eighth Circuit affirmed.  <u>Id.</u>

The instant case is on all-fours with <u>Astraea</u>.  Much like the choice-of-law clause at issue there, the clause here provides that New York law governs any "dispute . . . over the meaning, interpretation or operation of any term, condition, definition or provision of this policy."  Ceres's claims under the Alabama "bad faith" law and the Minnesota Consumer Fraud Act raise issues regarding Arch's obligations and performance under the Policy, specifically with regard to its duties to defend and indemnify.  (<u>See</u> Compl. ¶¶ 27, 37.)  Accordingly, as in <u>Astraea</u>, the claims fall within the Policy's New York choice-of-law clause.  And as set forth above, New York does not recognize independent torts on the part of an insurer in connection with its contractual obligations.  <u>See also</u> <u>Fla. State Bd. of Admin.</u>, 262 F. Supp. 2d at 1013-14.

### III.    The Counterclaims

Lastly, Arch has asserted three counterclaims, each of which relies upon the

Policy's "subrogation" clause.  That clause provides, in pertinent part:

> In the event of any payment under this policy, [Arch] shall be subrogated to
> all [of Ceres's] rights of recovery against any person or organization . . . .
> All recoveries obtained through subrogation shall be applied equally
> towards [Ceres's] deductible or retention as applicable and [Arch's] costs
> with any remaining balance payable to [Arch].

Based on this clause, Arch asserts that (1) it is entitled to all funds obtained by Ceres

through its claims against CMT, (2) such funds should be held in constructive trust for

Arch (Counterclaim 2), and (3) a declaratory judgment as to (1) and (2) should be entered

(Counterclaim 3).  Arch has moved for summary judgment on its counterclaims, and in

the Court's view it is entitled to most of the relief it seeks.  The Policy's subrogation

clause is clear:  Arch is "subrogated to" – that is, stands in the shoes of – Ceres with

respect to any "recovery against" CMT.  See, e.g., Stewart v. Atwood, __ F. Supp. 2d __,

2011 WL 5120427, at *6 (W.D.N.Y. Jan. 17, 2012).  Moreover, a constructive trust is an

appropriate remedy when an insured recovers money from a third party and the insurer is

subrogated to the insured's rights.  See id.

Ceres raises only one argument against summary judgment on the counterclaims:

subrogation is inappropriate under the "make whole" doctrine, which is "the right of the

insured to be made whole before the insurer's right to subrogation . . . accrue[s]."  SR

Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props. LLC, Nos. 01CV9291, 02CV0017,

2008 WL 2358882, at *10 (S.D.N.Y. June 10, 2008).  The make-whole doctrine is an

"equitable principle . . . that the burden of loss should rest on the [insurer, which is the]

- 14 -

party paid to assume the risk, and not on an inadequately compensated insured, who is the least able to shoulder the loss." USF & G v. Maggiore, 749 N.Y.S.2d 555, 559 (App. Div. 2002). Ceres argues that because it has "incurred significant defense costs beyond what Arch has paid," it has not been "made whole" and, hence, all of the Counterclaims are barred. (Mem. in Opp'n at 17.) The Court disagrees for two reasons.

First, Ceres ignores that it *has* been made whole for all *reasonable* expenses it incurred in the State Action. The make-whole doctrine is an equitable one, and the Court does not believe it would be inequitable to permit subrogation simply because Ceres has not been reimbursed for its *unreasonable* litigation expenses. Second, Ceres conflates *equitable* subrogation and *contractual* subrogation. An insurer's payment on behalf of its insured generally gives rise to a right of equitable subrogation, but Arch is not seeking to enforce that right here. Rather, it is seeking to enforce its contractual subrogation rights – rights granted to it under the Policy, which provides that Arch is subrogated to "all [of] [Ceres's] rights of recovery against any person or organization" once it has made "any payment." Under New York law, "contractual subrogation trumps equitable subrogation and the made whole doctrine so long as the language giving priority of recovery to the insurer is clear and explicit." SR Int'l, 2008 WL 2358882, at *11 (citing Winkelmann v. Excelsior Ins. Co., 650 N.E.2d 841, 844 (N.Y. 1995)). That is the case here – the Policy clearly and explicitly provides that Arch is subrogated to "all" of Ceres's rights, because it has made payments under the Policy.

Nevertheless, the Court concludes that Arch is not entitled to *all* sums Ceres might recover from CMT. The subrogation clause provides that any such funds "shall be

applied equally towards [Ceres's] deductible . . . and [Arch's] costs." Although Ceres alleged in its Counterclaims that Ceres had not yet paid its deductible (Counterclaims ¶ 12), at oral argument the parties agreed that Ceres had, in fact, done so. (3/28/12 Hear. Tr. at 31-32.) Accordingly, any recovery Ceres obtains from CMT must be equally split with Arch until its deductible had been fully repaid; only then is Arch entitled to the remainder of the recovered funds.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Arch's Amended Motion for Summary Judgment (Doc. No. 50) is **GRANTED**. It is further **ORDERED**:

1.      Plaintiff Ceres Environmental Services, Inc. shall recover of Defendant Arch Specialty Insurance Company $91,426, representing the remaining reasonable defense costs incurred in the State Action for which it has not been reimbursed;

2.      Ceres's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**; and

3.      Any funds obtained by Ceres via its claims against CMT shall be held in constructive trust for Arch, and Ceres shall provide a full accounting of such funds to Arch within fourteen days of receiving them. The funds must be equally split with Arch until Ceres's deductible has been fully repaid; Arch is then entitled to the remainder.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date:  April 4, 2012                         s/Richard H. Kyle
                                             RICHARD H. KYLE
                                             United States District Judge